IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JASPER MAURICE WARREN, #315498 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RDB-09-591 |
| CORRECTIONAL MEDICAL SERVICES, INC. | * | |
| Defendant. | * | |

*\*\**

## MEMORANDUM OPINION

Although filed as a 42 U.S.C. §1983 civil rights action for compensatory and punitive damages against the private medical contractor for the Maryland Division of Correction, the Complaint raises an access-to-courts claim.[1]  The Plaintiff, Jasper Warren ("Warren"), states that he is an inmate housed at the Eastern Correctional Institution.   He alleges that in early August of 2008 he filed a sick-call request to review his medical file and have copies made so that he could present them as evidence for a September 25, 2008 court hearing.   Warren complains that although he submitted two additional sick-call requests on September 11 and 14, 2008, Defendant never responded to his request.   (Paper No. 1).   He alleges that it was only after his administrative remedy procedure ("ARP") grievance, filed on August 12, 2008, was found to be meritorious in part, that he was called in to review his medical file and to have copies made. This occurred on October 23, 2008.   Warren states that he did not receive the copy work until November 30, 2008.

The Complaint further alleges that on January 29 and February 8, 2009, Warren submitted other sick-call requests to "Medical Records" in which he stated he needed to review

---

[1] Plaintiff also alleges violations of Articles 19 and 40 of the Maryland Declaration of Rights.  Paper No. 1.

his medical records and have copies made immediately for "legal purposes." (Paper No. 1). He maintains that Defendant has not complied with his requests and that this "hinders his ability to file motions, etc in the [state] circuit court case."

Now pending are Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Plaintiff's Cross-Motion for Summary Judgment, and Plaintiff's second Motion for Appointment of Counsel. (Paper Nos. 12, 17, & 20). The motions have been fully briefed, and Warren has been afforded a full opportunity to substantiate his claims. No hearing is necessary. In a separate order, the Court will grant Defendant's Motion. As is more fully explained herein, Warren falls far short of proving a constitutional violation. The Court shall examine Warren's claims under the applicable motion to dismiss, summary judgment, and Fourteenth Amendment standards of review.

## Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964-65 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id*. at 1966 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S.Ct. 1937, 1949 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *IFAST, Ltd. v. Alliance Solution Telecommunications Industry*, 2007 WL 3224582, at *3 (D. Md. 2007).

## Motion for Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex*, 477 U.S. at 322-23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue of material fact for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla"of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted).   Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Fourteenth Amendment Access-to-Courts**.

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978).  The Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996).  According to the *Lewis* Court, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they

be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Defendant Correctional Medical Services, Inc. ("CMS") argues that the Complaint should be dismissed because: (1) Warren has failed to allege "actual injury" in his state court litigation;  (2) as a corporate entity it cannot be held liable under 42 U.S.C. § 1983; and (3) documentation shows that CMS's actions did not violate Warren's rights under the Fourteenth Amendment.

It is Defendant's contention that there is no record that Warren filed a request to review his medical records in early August of 2008, but that they did receive his request slips on or about September 11 and September 14, 2008.  They indicate, however, that the Medical Records Department ("MRD") at ECI was unable to accommodate Warren's request until October 23, 2008.[2] CMS further acknowledges that the MRD received Warren's January 29, 2009 sick-call request to review his medical records and obtain copies of the notes of Dr. Robert Spence. Defendant claims that the MRD was unable to accommodate Warren's request at that time "due to the number of requests by inmates to review their files."   CMS alleges that Warren's February 8, 2009 sick-call request for review and copying of his files, which was submitted as an exhibit to his Complaint, is not date-stamped and is not in Warren's medical records chart.  CMS argues that MRD staff did not knowingly refuse to disclose medical records to Warren and did, at all times, act in good faith in attempting to comply with his request.

---

[2] CMS argues that the MRD makes every attempt to comply with an inmate request in a timely manner, but this is not always possible due to the number of inmate requests and the unavailability of staff to accompany the inmate while he reviews his medical chart.

When arguing the merits of Warren's claim, CMS asserts that he had access to his medical records as early as September 23, 2008, through his former attorney Stephen Z. Meehan[3] who, acting on behalf of Warren, filed a complaint for temporary restraining order, preliminary injunction, and permanent injunction, request for waiver of bond, and requests for hearings in the Circuit Court for Somerset County on September 23, 2008 in *Warren v. Baucom, et al.,* Case No. 19C08012610.  CMS claims that Meehan submitted 14 pagers of Warren's medical records as exhibits to the complaint.   It is also alleged that Meehan submitted additional medical records as exhibits in an amended complaint in the same state court case on December 4, 2008.    CMS asserts that after Meehan was dismissed as counsel, Warren filed *pro se* pleadings in the state court case on December 30, 2008, March 6, 2009,  and May 8, 2009 (amended complaints and cross-motion for summary judgment), all accompanied by medical record exhibits, including those sought in his sick-call requests.   At the time CMS filed its dispositive motion, it claimed that Warren's state court action remains pending in the Circuit Court, therefore making it impossible for him to demonstrate actual injury in his litigation.

In his Opposition response and Cross-Motion for Summary Judgment, Warren claims that he required the medical records in preparation for a September 25, 2008 hearing in the Circuit Court of Somerset County on an administrative agency review of an Inmate Grievance Office ("IGO") decision.  *See In the Matter of Jasper Warren*, Case No. 19C08012250.  He again claims that CMS failed to comply with his requests to review and copy his records which "hinder[ed] his ability to file motions and present evidence in the circuit court action."  Warren reiterates his claims that he was not given access to his medical records until October 16, 2008 and was not provided the copy work until November 20, 2008.   He claims that he submitted his

---

[3] The Court takes judicial noticed that Mr. Meehan is counsel for Prisoner Rights Information System of Maryland, Inc. ("PRISM").

first requests for copy work in August of 2008 in order to obtain copies of Dr. Peter Cuestra's recommendation for foot surgery. Warren states that he was unable to submit the recommendation to the circuit court and if he had been able to do so "maybe the circuit court judge would have given him relief and not dismissed the case." He maintains that the failure to address and grant his request for medical record review and copy work resulted in the dismissal of his administrative agency review in the circuit court on September 25, 2008.

Warren also claims that his January and February 2009 requests for copy work from his medical records have gone unanswered. He maintains that if he had copies of photographs of his foot taken in January of 2009, the judge in his ongoing state court civil action "would have been inclined to grant him the injunctive relief he requested."

It is well settled law that a claimant may not recover against a municipality on a respondeat superior theory under 42 U.S.C. § 1983. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690-695 (1978). To the extent the Complaint names CMS in the alleged denial of access to medical records solely upon vicarious liability, case law in this circuit is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). CMS's Motion to Dismiss will be granted.

Alternatively, when reviewing the merits of the case the Court finds that Warren has not sufficiently refuted Defendant's materials to show actual injury with his state court litigation from the delays and denial of medical records as required under *Lewis*. The Court has focused on Warren's state court filings related to the administrative agency review and civil action he filed in the Circuit Court for Somerset County. First, he points to circuit review of the decision entered by

7

the IGO. While this Court was not provided materials showing the underlying subject matter of the IGO case, Warren's Opposition infers that the case involved the medical care received for a deformity to his ankle. While it remains uncontroverted that Warren was not provided requested medical records in time for his September 2008 circuit court hearing, he does not with any particularity show how he suffered real injury from his inability to present the medical record exhibits to the state court judge.[4] He only speculates that the judge may not have dismissed his case. Further, given the limited purview of the circuit court judge in such administrative agency reviews, any substantive relief to be afforded to Warren would have been limited to dismissal or reversal and remand of the case back to the IGO.[5]

The Court further observes that on September 23, 2008, Warren's civil action in the circuit court was initially filed by counsel against state and medical defendants regarding the deformity to Warren's ankle. Medical records, including a written recommendation from Dr. Cuestra for surgery, accompanied the complaint. An amended complaint filed by Meehan also included additional medical records. Warren's *pro se* amended complaints and cross-motion for summary judgment were supported by portions of his medical record.[6] Plainly, Warren was able to file

---

[4] For example, Warren does not discuss the reasons why the assigned state court judge dismissed his administrative agency review case or how the admission of medical records would have caused the judge to reach a different decision.

[5] In *Adamson v. Correctional Medical Services, Inc.*, 359 Md. 238 (Md. 2000), the Court of Appeals of Maryland reviewed the legislative history of the Maryland Administrative Remedy Procedure ("ARP") process, In so doing it noted that the ARP permits a prisoner to submit a complaint for grievances against officials or employees of the Maryland Division of Correction and Patuxent Institution through to the IGO. It further observed that ARP grievances must be exhausted through to the IGO before seeking judicial review. Finally, the Court of Appeals noted that the documentation presented in the case establishes that the IGO declines to hear prisoner grievances against private health care contractors. *Adamson*, 359 Md. at 266-271. In sum, the Court of Appeals found that the Maryland prisoner administrative remedy process does not encompass complaints against private medical providers under contract with the state. Therefore, it would appear that the IGO had no subject matter jurisdiction over claims filed against health care providers.

[6] The state court docket shows that on August 28, 2009, a civil proceeding was held before Somerset County Circuit Court Judge Daniel M. Long. *See Warren v. Baucom, et al.,* Case No.

medical records in support of his civil case pleadings. He again fails to show how the failure to present into evidence certain unavailable medical records would have caused the judge to reach a different conclusion. His contentions regarding his ability to obtain a favorable judgment with the medical records is speculative at best. Consequently, Warren's access-to-courts claim shall be dismissed.[7]

For the foregoing reasons, the Court will, by separate Order, grant Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and deny Warren's Cross-Motion for Summary Judgment[8] and Motion for Appointment of Counsel.[9]

Date: November 4, 2009            ____/s/_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

19C08012610 (copy attached). Defendants' motion for summary judgment was granted. The case is currently on appeal before the Court of Special Appeals of Maryland. The undersigned also observes that Warren has filed a medical civil rights action in this Court regarding his ankle deformity and the failure to provide him corrective surgery. *See Warren v. Green, et al.*, Civil Action No. RDB-09-1308 (D. Md.). That case remains pending.

[7] In reaching this decision the Court is mindful that the MRD delay in providing Warren his medical record is disconcerting, particularly when Warren set out a particular legal need for the materials by a certain date and the underlying case concerned allegations of the denial of medical care against prison healthcare professionals.

[8] In light of the dismissal of the underlying civil rights action, the Court declines to exercise its pendent jurisdiction over any claims raised by Warren under Maryland law. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

[9] On July 27, 2009, the Court denied Warren's first Motion for Appointment of Counsel. (Paper No. 14). In his Second Motion for Appointment of Counsel he reiterates the grounds raised in his prior Motion. (Paper No. 20). The Court shall deny the new Motion for those reasons previously articulated.